**UNITED STATES DISTRICT COURT**
**for the DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION for ) the ADVANCEMENT ) of MULTIJURISDICTION ) PRACTICE (NAAMJP) ) 12016 Wilshire Blvd. Suite 5 ) Los Angeles, CA 90025 ) Jose Jehuda Garcia, ) Marinna L. Callaway, ) Herbert Howard Detrick II ) )     Plaintiffs ) ) vs. ) ) ) ) ) ) )     Defendants, ) Richard W. Roberts, Chief Judge ) U.S. District Court for the ) District of Columbia ) United States Courthouse ) 333 Constitution Avenue, NW ) Washington, DC 20001 ) Emmet G. Sullivan, Colleen ) Kollar-Kotelly, Ellen S. Huvelle, ) Reggie B. Walton, John D. Bates, ) Richard J. Leon, Rosemary M. ) Collyer, Beryl A. Howell, Robert ) L. Wilkins, James E. Boasberg, ) Amy Bermnan Jackson, Rudolph ) Contreras, Ketanji Brown Jackson ) _____) | CIVIL ACTION NO.1:13-CV-1963 COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF TO ABROGATE D.C. LCvR 83.8 (a)(2) AND TO AMEND AND ENLARGE IT TO PROVIDE RECIPROCAL ADMISSION TO ALL SISTER-STATE ATTORNEYS ADMITTED IN ANY STATE SUPREME COURT OR UNITED STATES COURT UNDER 1. 28 U.S.C. §§ 2071-72 2. SUPREMACY CLAUSE 3. FIRST AMENDMENT 4. FIFTH AMENDMENT EQUAL PROTECTION CLAUSE |

## COMPLAINT INTRODUCTION

1.   The First Amendment provides that Congress shall make no law abridging the freedoms of speech, association, and to petition the government for the redress of grievances. Courts, too, are bound by the First Amendment. The United States Supreme Court has squarely held that bar admission on motion for out-of-state attorneys is constitutionally protected, and the norm for bar admission on motion is comity. *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988). The United States Supreme Court has held "the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court."  *Frazier v. Heebe, Chief Judge, United States District Court for the Eastern District of Louisiana et. al*, 482 U.S. 641, 649 (1987)

2. District of Columbia LCvR 83.8 provides, "Admission to and continuing membership in the Bar of this Court are limited to attorneys who are….

> "(2) active members in good standing of the highest court of any state in which the attorney maintains his/her principal law office and is a member in good standing of a United States District Court that provides for reciprocal admission to members of the Bar of this Court**."**

Plaintiffs aver LCvR 83.8(a)(2) contradicts *Friedman* because it abridges the constitutional norm of reciprocal admission by limiting general bar admission privileges to otherwise qualified members of the bar.  LCvR 83.8(a)(2) only provides reciprocal admission to only 25 out of 94 U.S. District Courts. These 25 District Courts have Local Rules that provide reciprocal admission to members of

the bar of U.S. District Court for the District of Columbia, are located in only 15 states. Plaintiffs aver LCvR 83.8(a)(2) contradicts *Frazier* because it has nothing what so ever to do with intellectual ability or experience in federal court.  Plaintiffs aver LCvR 83.8(a)(2) is irrational and serves no legitimate governmental purpose; that it has the practical effect of targeting and retaliating against a locally unpopular group in the exercise of their First Amendment rights; that it is unlawful under the *Rules Enabling Act;* that it is an antiquated vestige from a bygone era that continues to exist in this 21st Century because of inertia. Plaintiffs seek Declaratory and Injunctive Relief providing reciprocal general admission privileges for all sister-state attorneys regardless of what United States Court they are admitted, regardless of what State Court they are admitted and in good standing, and regardless of where they have their principal office.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction under 28 U.S.C. § 1331. Venue is appropriate in the District of Columbia.

## PARTIES

4.  Plaintiff  NATIONAL ASSOCIATION for the ADVANCEMENT OF MULTIJURISDICTION PRACTICE (NAAMJP) is a public benefit corporation organized under California law with offices in Los Angeles, CA 90025.  Plaintiff, like other corporations such as in *Citizens United v. Federal Election Commission*,

130 S.Ct. 876 (2010) (holding corporations have First Amendment rights), is engaged in interstate commerce and advocacy throughout the United States for the purpose of improving the legal profession, by petitioning for admission on motion in the dwindling minority of jurisdictions that have not yet adopted the ABA's recommendations for reciprocal admission for all lawyers. "An association can bring claims on behalf of its members." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494, (2009).  The NAAMJP also asserts association and third-party standing because many of its members want to remain anonymous for many reasons including privacy.  These members have been handicapped and deprived of their constitutional rights by the LCvR 83.8(a)(2), which is overbroad prior restraint that they are categorically disqualifies them for general admission privileges in the U.S. District Court for the District of Columbia.

5. Plaintiff JOSE JEHUDA GARCIA is an American citizen and a member of the NAAMJP, a graduate of ABA accredited law school, and a well-qualified Hispanic-American lawyer in good standing admitted to the bar of the New Mexico Supreme Court .  Latinos make up 15.8 percent of the population but only 2.8% of attorneys are Hispanic.  The first Mexican-American lawyer who argued a case in the United States Supreme Court was not permitted to use the "whites-only" bathrooms in the United States Supreme Court building. Supreme Court Justice SONIA SOTOMAYOR last week criticized the judiciary for a lack of diversity in

every areas of the legal profession at American University's Washington College of Law.[1]  Mr. GARCIA is handicapped because he is domiciled in a state that does not provide reciprocal admission to any sister-state attorneys. Mr. GARCIA is also handicapped because he is a not member of the bar of a District Court that provides reciprocal admission to members of the bar of the U.S. District Court for the District of Columbia. Mr. GARIA, as lawyer and citizen, is disabled by the challenged Local Rule, which affords him and other similarly situated Hispanic-Americans second-class treatment.  Mr. GARCIA will apply for admission to the U.S. District Court for the District of Columbia bar if its admission rule is changed.

6. Plaintiff MARINNA L. CALLAWAY is an American citizen and a member of the NAAMJP, and an African-American attorney who graduated from De Paul University Law School in 1986.  African-Americans make up 12.3 % of the population but only 4.7% of attorneys. She is an honorable discharged Veteran admitted in Illinois with extensive experience in criminal law.  Ms. CALLAWAY has served: as Judge Advocate in the Air Force for six years, an Assistant Public Defender in Illinois, as an Assistant State's Attorney in Illinois, and as an a registered In-House Counsel in California. Ms. CALLAWAY is handicapped

---

[1] ABA Journal  November 21, 2013
http://www.abajournal.com/news/article/sotomayor_says_judiciary_is_missing_a_huge_amount_of_diversity/?utm_source=maestro&utm_medium=email&utm_campaign=daily_email

5

because she is categorically disqualified because she is domiciled in a state that does not provide reciprocal admission and because she is not a member of the bar of a District Court that provides reciprocal general admission privileges to members of the bar of the U.S. District Court for the District of Columbia. Ms. CALLAWAY, as lawyer and citizen, is disabled by the challenged Local Rule, which affords her and other African-Americans second-class treatment.    Mr. CALLAWAY will apply for admission to the U.S. District Court for the District of Columbia bar if the Local Rule is changed.

7.   Plaintiff HERBERT HOWARD DETRICK II is an American citizen and a lawyer in good standing admitted to the bar of the multiple state and federal courts including: the New York Supreme Court, New Jersey Supreme Court, Connecticut Supreme Court, Florida Supreme Court, United States Supreme Court; and United States District Courts for the Southern and Eastern Districts of New York, and the District of New Jersey.  He has moved inter-state several times over his career because of his wife's career opportunities.  The results of these frequent moves is that he has had his career advancement frequently interrupted, requiring that he take and pass bar examinations in five states.  Mr. DETRICK alleges he has essentially wasted tens of thousands of dollars and hours in preparing to take repetitive state bar exams and waiting for his results. Mr. DETRICK is handicapped because he is domiciled in a State that does not provide reciprocal

admission to any lawyers. Mr. DETRICK is also handicapped because he is not a member of the bar of a District Court that provides reciprocal admission to members of the U.S. District Court for the District of Columbia. Mr. DETRICK, as lawyer and citizen, is disabled by the challenged Local Rule, which affords him, and other similarly situated Americans, who travel interstate to take advantage of career opportunities, second-class treatment.   Mr. DETRICK will apply for admission to the U.S. District Court for the District of Columbia bar if the Local Rule is changed.

8. The defendants are the very Hon. Chief Judge Richard W. Roberts, of the United States District Court for the District of Columbia, and his colleagues the Honorable District Judges: Emmet G. Sullivan, Colleen Kollar-Kotelly, Ellen S. Huvelle, Reggie B. Walton, John D. Bates, Richard J. Leon, Rosemary M. Collyer, Beryl A. Howell, Robert L. Wilkins, James E. Boasberg, Amy Bermnan Jackson, Rudolph Contreras, Ketanji Brown Jackson. These (underpaid honorable public servants laboring under a heavily clogged docket) are sued in their official capacity for prospective injunctive and declaratory relief.

## FACTS

9. The American Bar Association (ABA) has twice in this 21st Century carefully studied and recommended the reciprocal admission Plaintiffs have petitioned for in this case.  The ABA MJP Commission (2002) and ABA Ethics

20-20 Commission (2012) studies were undertaken because of continually evolving technology, client demands and a national (as well as global) legal services marketplace have fueled an increase in cross-border practice as well as a related need for lawyers to relocate to new jurisdictions.  These ABA studies are undertaken by renowned attorneys, from all over the United States, holding multiple public hearings all over the United States, and receiving comments from all arms of the public and bar, before reaching its recommendations, which are then submitted for further comment, and eventually to a 500 member ABA House of Delegates for approval or rejection.

10. The US Supreme Court has held professional norms articulated by the American Bar Association are "(s)tandards to which we have referred as 'guides to determining what is reasonable.'" *Wiggins v. Smith*, 539 US 510, 524 (2003).  The ABA determined that over 40,000 lawyers in the last five years have been admitted on motion in 39 states and the District of Columbia. The ABA entered a factual finding that there was no evidence that these lawyers were a threat to the public or needed to take another bar exam. [2] The ABA squarely recommends that in light of

[2] "The Commission also found unpersuasive the concern that passage of the bar examination is necessary to demonstrate knowledge of the law of the jurisdiction in which the lawyer is seeking admission. As explained above, more than 65,000 lawyers have obtained admission by motion in the last ten years, and there is no evidence from disciplinary counsel or any other source that these lawyers have been unable to practice competently in the new jurisdiction or have been unable to identify and understand aspects of the new jurisdiction's law that differ from the

ever increasing advances in technology that all states should adopt bar admission on motion for lawyers with three years of experience.  The Commission on Ethics 20-20 "found no reason to believe that lawyers who have been engaged in the active practice of law for three of the last seven years will be any less able to practice law in a new jurisdiction than a law school graduate who recently passed the bar." The ABA concluded the failure to have admission on motion injures the public and the profession; women lawyers are further disproportionately injured.

11.  These ABA judgments are game-changers because they demolish the doctrine experienced attorneys should take a second licensing exam — much like the myths that blacks were inferior, women were witches, and that literacy tests were necessary to vote— were superseded by cultural advances stemming from science and better evidence.

12. The ABA further squarely recommends abolishing "you get reciprocity if we get reciprocity" restraints[3]  like the challenged D.C. LCvR 83.8 (a)(2). The ABA MJP Commission (2002) and Commission on Ethics 20/20   (2012)

---

law of the jurisdiction where those lawyers were originally admitted. The Commission also concluded that the "local law" concern rests on the incorrect assumption that passage of the bar examination demonstrates competence in local law. In fact, an increasing number of jurisdictions use the Uniform Bar Examination, which typically does not require any knowledge of local law. And in jurisdictions that do test local law, the local law portion of the test is usually sufficiently small that bar passage does not turn on it."

[3] "The Commission believes that such varied additional restrictions only serve to sustain outdated and parochial purposes at a time when the relevance of borders to the competent practice of law has and will continue to erode."

necessarily presumed — if by law, a layman is presumed to know the law, or can presumptively find it, and is presumptively capable of representing herself — *a fortiori* an experienced licensed attorney can do the same.  The hypothesis that a layman is presumptively competent, while on the other hand, an experienced lawyer is presumptively incompetent is implausible and irrational.   The ABA essentially concluded, in accordance with the Constitution of the United States, that if all men are created equal, then all lawyers are created equal.

13. The ABA has further recommended that the U.S. District Court policy of restricting practice privileges to lawyers who are admitted to the State bar in which the district is located should be eliminated.  Recommendation 8A was adopted by the ABA House of Delegates in 1995. The ABA concluded that "Given the global nature of law practice today, parochial local rules are inefficient, unduly costly to clients and/or lawyers and anti-competitive."

14. The ABA has also obviously considered Supreme Court precedent. There is a presumption "that the lawyer is competent to provide the guiding hand that the defendant needs" applies even to young and inexperienced lawyers in their first jury trial and even when the case is complex. *United States v. Cronic*, 466 U. S. 648, 658, 664 (1984);  *See* also *Supreme Court of Virginia v. Friedman*, *supra*, 487 U.S. 59 (1988)(holding admission on motion is a constitutionally protected Privilege and Immunity, and the Supreme Court will not presume that non-resident

attorneys or citizens are not fully qualified for bar admission on motion); *See Frazier v. Heebe, supra*, 482 U.S. 641, 649 (1987) (holding "the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court." )

15.   Another game changer in reciprocal bar admission is the Uniform Bar Examination (UBE), which was created and pioneered by the National Conference of Bar Examiners (NCBE).[4]  The NCBE developed the UBE in an effort to create uniformity between the various legal bar examinations administered by the states.[5] "Law schools are teaching a national curriculum. The Uniform Bar Examination (UBE) recognizes that trend. In addition, lawyers are relocating more frequently."[6] The UBE is intended to facilitate lawyer mobility across jurisdictional lines.  State Supreme Court justices in 13 States have adopted the UBE. The UBE does not test state law.  A novice lawyer admitted in any UBE state is eligible for reciprocal licensing in all UBE states.

16. Bedford T. Bentley*, a* Maryland licensing official and a member of the UBEC, in referencing the *ABA MacCrate Commission* (1992) has concluded that

---

[4] http://www.ncbex.org/assets/media_files/UBE/ABA-Uniform-Bar-Exam-2010-Council-9-14-v2-3.pdf

[5] http://www.abajournal.com/magazine/article/one_for_all_uniform_bar_exam_picking_up_steam/

[6] Arizona State Bar Board of Governors: September Meeting Review (Sept. 2010).

*one bar exam is more than enough* as they do not test nine out of ten fundamental lawyer skills.[7]

17. "A bar exam is a test of minimum competence to practice law." See Rebecca White Berch, "The Case for the Uniform Bar Exam, *The Bar Examiner*, Feb 2009 p. 12. The purpose of this licensing test is public protection. The ABA and UBEC *have concluded that one bar exam is more than enough*. The ABA concluded the best evidence of minimum competence and public protection is actual experience in practicing law.   The UBEC concluded that even novice attorneys should not have to take a second licensing test.

18.   *The Standards for Educational and Psychological Testing* (1999) (Published by the American Educational Research Association, American Psychological Association, and the National Council on Measurement in Education) (Standards) were developed "to provide criteria for the evaluation of tests, testing practices, and the effects of test use." *Id*.  at p. 2. "When tests are at issue in legal proceedings and other venues requiring expert witness testimony it is essential that professional judgment be based on the accepted corpus of knowledge

---

[7] Robert MacCrate is the distinguished former chairman of the ABA's "Task Force on Law Schools and the Profession" (1992).   The well-regarded "MacCrate Report" describes the skills and virtues necessary to be an effective lawyer.   The "MacCrate Report" identifies ten fundamental lawyering skills:
(1) problem solving, (2) legal analysis and reasoning, (3) legal research,
(4) factual investigation, (5) communication, (6) counseling, (7) negotiation,
(8) litigation and alternative dispute resolution, (9) the organization and management of legal work, (10) professional self-development.

in determining the relevance of particular standards in a given situation.  The intent of the *Standards* is to offer guidance for such judgments." *Id*. at 4.

19. The *Standards* also emphasize that evaluating acceptability (of a test) involves (a) professional judgment that is based on a knowledge of behavioral science, psychometrics, and the community standards in the professional field to which the tests apply; (b) the degree to which the intent of the standard has been satisfied by the test developer and user; (c) the alternatives that are readily available; and (d) research and experimental evidence regarding feasibility of meeting the standard." *Id*. at 4.

20.   Plaintiffs aver that D.C. LCvR 83.8 (a)(2) which limits reciprocal admission to members of the bar of only 25 out of 94 District Courts that are located in 15 states violates the legal industry licensing standards for reciprocal licensing established by the ABA and UBEC.

21. Plaintiffs aver that D.C. LCvR 83.8 (a)(2), adopted a long time ago by majority vote of the honorable defendants, is morally reprehensible much like a priest having two wives, because it functions in this 21st Century as a template for other United States District Courts to model that undermines the legal industry standard for reciprocal licensing, eviscerating the United States as a single entity, undermining the integrity of the legal profession and the United States Judiciary.

***

## FIRST CAUSE OF ACTION
## VIOLATION OF 28 U.S.C. §§ 2071-72

22. The preceding allegations and the allegations in the subsequent causes of action are incorporated in this cause of action.

23. Plaintiffs are not aware of any published case challenging U.S. District Court "local" general admission rules decided pursuant to Title IV of the Judicial Improvements and Access to Justice Act of 1988.   (Public Law 100 -- 702). Section 2071 is concerned with each court making local rules for itself. Section 2072 is concerned with the promulgation of the general rules of national applicability.

24. 28 U.S.C. § 2071. Rule-making power generally, provides:

(a) The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. *Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title*. (Emphasis added)

25.  28 U.S.C. § 2072. Rules of procedure and evidence; power to prescribe, provides,

(b) *Such rules shall not abridge, enlarge or modify any substantive right*. (Emphasis added)

26.  Section 2071, as noted above is concerned with each court making rules for itself.   Section 2071(a) incorporates the standard set forth in Section 2072. Thus, 2071 and 2072 added together means that District Court Local Rules "*shall*

*not abridge, enlarge or modify any substantive right*." (Emphasis added)." This is a standard of review higher than strict scrutiny because it applies to any substantive right, not just constitutional rights.

27. DC LCvR 83.8(a)(2) disables the mandatory constraint (*shall*) set forth in 28 U.S.C. § 2072(b) because it categorically modifies and enlarges the privileges of members of the bar of 25 District Court attorneys by granting them general admission privileges; and it categorically modifies and abridges the substantive rights of the Plaintiffs, and other members of the bar of the remaining District Courts, by denying them general admission privileges.

28. DC LCvR 83.8(a)(2) abridges and modifies the substantive rights of Americans: to counsel, the right to association, and the right to petition the government for the redress of grievances by categorically excluding Plaintiffs and other highly qualified lawyers; and it categorically enlarges the substantive rights of the members of the bar of 25 U.S. District Courts.

29. DC LCvR 83.8(a)(2) disables the mandatory constraint (*shall*) set forth in 28 U.S.C. § 2072(b) because the Supreme Court has held that admission on motion is a constitutionally protected Privilege and Immunity, and the Supreme Court will not presume that non-resident attorneys or citizens are not fully qualified for bar admission on motion. *See Supreme Court of Virginia v. Friedman,*

*supra*, 487 U.S. 59 (1988).   DC LCvR 83.8(a)(2) disqualifies the otherwise qualified Plaintiff in exercising their constitutional right to admission on motion.

30. DC LCvR 83.8(a)(2) disables the constraint (shall) set forth in 28 U.S.C. § 2072(b) because the Supreme Court has held "the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court." *See Frazier v. Heebe, supra*, 482 U.S. 641, 649 (1987).   DC LCvR 83.8(a)(2), in part, disqualifies the otherwise qualified Plaintiff solely on the basis of the location of their principal office.

31. The assumption underlying LCvR 83.8(a)(2) that bar admission in a preferred state is a necessary attribute of competence for U.S. District Court bar admission is antiquated; it flies in the face of  the Local Rules in 34 District Courts that do not discriminate in bar admission; it turns upside down the ABA recommendations and UBEC for reciprocal admission.

32. The National Rules for federal bar admission are ratified or enacted by Acts of Congress.  These include Supreme Court Rule 5, FRAP 46 and 5 U.S.C. 500(5).  The National Rules for bar admission authorize admission to all sister-state attorneys, not just attorneys admitted in 25 District Courts. By contrast, District Court Local Rules are not ratified or enacted by Congress.  Thus, DC LCvR 83.8(a)(2) disables the constraint set forth in 28 U.S.C. § 2072(b) because it abridges Plaintiffs substantive rights as members of the bar by authorizing them

the rights to practice before federal administrative agencies, the United States Courts of Appeal, and the Supreme Court, but not in the District Court for the District of Columbia.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE SUPREMACY CLAUSE

33. The preceding allegations and the allegations in the subsequent causes of action are incorporated in this cause of action.

34. State licensing requirements which purport to regulate private individuals who appear before a federal instrumentality are invalid. *Sperry v. Florida*, 373 U.S. 379, (1963) is the leading case. The Supreme Court held that a "State may not enforce licensing requirements which . . . give the State's licensing board a virtual power of review over the federal determination that a person or agency is qualified and entitled to perform certain functions," and found that the state's licensing requirements could not govern practice before the PTO. *Id*. at 385, 388. The Supreme Court concluded that applying state licensing requirements to practitioners appearing before the PTO would have a "disruptive effect," given that one-quarter of the attorney practitioners before the PTO would have been disqualified because they were not licensed in the state in which they were practicing." *Sperry*, 373 U.S. at 401.

35. DC  LCvR 83.8(a)(2) for the same reasons has a "disruptive effect;" it by vicariously adopting state law unlawfully trumps  the Supremacy Clause; the

practical effect of this Rule is to limit federal bar admission to members of the bar of the 15 States that have District Courts that provide reciprocal admission to members of its bar.

36. In *Augustine v. Dept. of Veterans Affairs*, 429 F.3d 1334, 1341 (Fed. Cir. 2005), the question of whether federal law may adopt or incorporate state law standards as its own, was expressly raised and rejected. There, the Court held incorporation "is controlled by the will of Congress. In the absence of a plain indication to the contrary . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." *Id*. at 1340. The presumption here again is that federal law does not incorporate state standards. *Id*. at 1342.  The Court further held that the purpose of the Congressional fee-shifting statute can be served only by allowing fees for representatives who are licensed as attorneys in any state or federal jurisdiction, without regard to the state licensing requirements of the state in which services were rendered. Id. at 1343. By the same reasoning, District Court Local Rules that incorporate state bar admission rules from the 15 favored States "impose . . . additional conditions" not contemplated by Congress.  *Sperry*, supra, 373 U.S. at 385.  These additional conditions further are squarely opposed to the *Rules Enabling Act*, Sections 2071-72 noted above.

***

## THIRD CAUSE OF ACTION
## DC  LCvR 83.8(a)(2) VIOLATES THE FIRST AMENDMENT

37. The preceding allegations and the allegations in the subsequent causes of action are incorporated in this cause of action. The operations of the courts and the judicial conduct of judges are matters of utmost public concern. *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978).  Litigation is a form of political expression. *In re Primus*, 436 U.S. 412, 428.   The First Amendment protects "litigation [as] a means for achieving the lawful objectives of equality by all government." *NAACP v. Button*, 371 U.S. 415, 429 (1963).  It is thus a form of political expression. *Ibid*. "It is no answer to the constitutional claims … that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression." *Id*. at 438-39.   Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid. *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).

### A.   DC  LCvR 83.8(a)(2)  is Substantially Overbroad

38. A state law may be deemed constitutionally invalid if it is substantially overbroad. *Broadrick v. Oklahoma*, 413 U.S. 601 (1973).   A government regulation is substantially overbroad if it suppresses substantially more speech than necessary to achieve its goal. *Id*. at 612.  DC LCvR 83.8 (a)(2) chills more speech

than necessary by categorically discriminating against all lawyers, except those from the preferred 25 favored District Courts located in 15 states.

39. This categorical disqualification is patently overbroad, not narrowly tailored, and therefore unconstitutional.

### B.   DC  LCvR 83.8(a)(2) is An Unconstitutional *Prior Restraint*

43. Prior restraints on First Amendment rights are presumptively unconstitutional. *Southeastern Promotions, Ltd. v. Conrad*,  420 U.S. 546, 558, (1975). In its simple, most blatant form, a prior restraint is a law which requires submission of speech to an official who may grant or deny permission to utter or publish it based upon its contents. *Alexander v. United States*, *supra*, 509 U.S. 544, 556 . ( KENNEDY dissenting)

44. In *Citizens United v. Federal Election Com'n*, *supra*, 558 U.S. 310, 130 S. Ct. 876, 891 (2010), the corporation was barred from publishing its view in a film about Hilary Clinton The First Amendment freedoms to advocacy, association, petition, and press are inextricably intertwined. Lawyers have a constitutional duty and function much like the press.  In *Citizens United* the Court affirmed:

> "**These onerous restrictions thus function as the equivalent of prior restraint by giving the FEC power analogous to licensing laws implemented in 16th- and 17th-century England, laws and governmental practices of the sort that the First Amendment was drawn to prohibit**. See *Thomas v. Chicago Park_Dist.,* 534 U.S. 316, 320, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002); *Lovell v. City of Griffin,* 303 U.S. 444, 451-452, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Near, supra,* at 713-714, 51

S.Ct. 625. Because the FEC's "business is to censor, there inheres the danger that [it] may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression." *Freedman v. Maryland,* 380 U.S. 51, 57-58, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). When the FEC issues advisory opinions that prohibit speech, "[m]any persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." 130 S.Ct. at 895-96.  (Emphasis added)

45. The Supreme Court held these FEC prior approval regulations on their face chilled the corporation's speech.

46. In the same way, LCvR 83.8 (a)(2) restrains the Plaintiffs, and it chills otherwise qualified attorneys from 35 states from exercising their right to engage in speech in the Federal District Court in our Nation's capital concerning matters of public concern, solely because they are members of the bar of disfavored state and district courts.

   **C.   DC  LCvR 83.8(a)(2) Constitute Unlawful Content and Viewpoint Discrimination**

48. The Supreme Court has recognized that the basic analysis under the First Amendment has not turned on the motives of the legislators, but on the effect of the regulation. *Young v. American Mini Theaters*,   427 U.S.  50, 78 (1975) The true motive behind the creation and adoption for LCvR 83.8 (a)(2) does not change the First Amendment analysis; it is its effect that we must look to in determining its constitutionality.

49. "A regulation that denies one group of citizens the right to address a selected audience on controversial issues of public policy is plainly viewpoint discrimination." *Consolidated Edison Co. v. Public Serv. Comn'n*, 447 U.S. 530, 546 (1980). "Viewpoint discrimination is thus an egregious form of content discrimination." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 US 819, 829 (1995); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 46 (1983). "To permit one side of a debatable public question to have a monopoly in expressing its views is the antithesis of constitutional guarantees." *Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175-176 (1976). "A law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." *Lakewood v. Plain Dealer Publishing Co*, 486 U.S. 750, 763 (1988).

50. LCvR 83.8 (a)(2) allows attorneys from reciprocity jurisdictions to obtain a license and petition the courts and speak; whereas, it categorically prohibits attorneys from non-reciprocity jurisdictions the same precious freedoms. LCvR 83.8 (a)(2) is not a time, place, and manner restriction because it is not

viewpoint and content neutral.[8]  LCvR 83.8 (a)(2) permits licensing and debate by one group of otherwise qualified experienced attorneys while denying another group of otherwise qualified attorneys the same precious freedoms.   Therefore, LCvR 83.8 (a)(2) is content and viewpoint discrimination

51.   Moreover, distinctions in the right to exercise First Amendment freedoms are subject to strict scrutiny.   In *Citizens United v. Federal Election Commission*, 130 S.Ct. 876, (2010), the Court held:

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each. *Id*. at 890
>
> …
>
> Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored. *Id*. at 890

---

[8] To be upheld as a constitutional time, place or manner restriction a permit requirement applying to First Amendment activity must "(1) be content-neutral, (2) be narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels of expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 789-90 (1989). The LCvR 83.8 (a)(2) restrictions are not time, place or manner restrictions because it is not content neutral.

52. The basic premise underlying the Court's ruling in *Citizens United* is the proposition that the First Amendment bars regulatory distinctions based on a speaker's identity, including its "identity" as a corporation. *Id*. at 930 (Justice STEVENS in dissent). Courts, too, are bound by the First Amendment.  *Id*. at 891.

53. LCvR 83.8 (a)(2) makes differential licensing distinctions based on a speaker's identity as a member of a favored or disfavored state bar.   The hypothesis that a layman is presumptively competent to represent themselves, unless he or she is mentally ill, while on the other hand, Plaintiff experienced lawyers from non-reciprocity states are presumptively incompetent makes no sense. It is content and viewpoint discrimination. Therefore, LCvR 83.8 (a)(2) is unconstitutional.

**D.     DC  LCvR 83.8(a)(2) Constitutes Compelled Association that Abridges the First Amendment Right of Freedom of Association**

54. "The Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion."  *Roberts v. United States Jaycees*, 468 U.S. 609, 618  (1984).  The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State. *Ibid*.  "Moreover, the constitutional shelter afforded such relationships

reflects the realization that individuals draw much of their emotional enrichment from close ties with others.  Protecting these relationships from unwarranted state interference therefore safeguards the ability to independently define one's identity that is central to any concept of liberty." *Ibid*.  An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in a group effort toward those ends were not also guaranteed. *Id*. at 622. Government actions that may unconstitutionally infringe upon this freedom can take a number of forms. Among other things, government may seek to impose penalties or withhold benefits from individuals because of their membership in a disfavored group. *Ibid*.

55. The right to associate also includes a right *not* to associate.  *Roberts v. United States Jaycees*, *supra*, 468 U.S. at 622.  Here, as in *Roberts*, LCvR 83.8 (a)(2) imposes penalties and withholds privileges based solely on plaintiffs' licensing in disfavored non-reciprocity jurisdictions.  As such, the defendants bear the burden of proving the validity of the admission on motion rule, which it cannot meet because the U.S. Supreme Court has already held that admission on motion is a constitutionally protected Privilege and Immunity. *Supreme Court of Virginia v. Friedman, supra*, 487 U.S. 59 (1998).  The Supreme Court has held that the location of a lawyer's office simply has nothing to do with his or her intellectual

ability or experience in litigating cases in Federal District Court." Therefore, LCvR 83.8 (a)(2) is invalid as it abridges Plaintiffs' right to associate, and their other First Amendment rights.

### E.    LCvR 83.8 (a)(2) Violates the First Amendment Right to Petition

56. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries*, *Inc*., 508 U.S. 49 (1993), the Court in construing the right to petition held that litigation could only be enjoined when it is a sham.  To be a sham, first, it must be objectively baseless in the sense that no reasonable litigant could expect success on the merits; second, the litigant's subjective motive must conceal an attempt to interfere with the business relationship of a competitor …through the use of government process  — as opposed to the outcome of that process — as an anti-competitive weapon.  *Id*. at 60-61.

57. LCvR 83.8 (a)(2) violates the Petition Clause because it arbitrarily and irrationally presumes that the Plaintiffs, and all experienced lawyers from non-reciprocity jurisdictions, will file sham petitions for an anti-competitive purpose, and only file sham petitions for an anti-competitive purpose unless they are admitted in 25 favored district courts, and have their primary office in favored states.  There is no evidence that experienced attorneys in good standing from non-reciprocity jurisdictions will violate their professional responsibilities, and file sham petitions for an anti-competitive purpose.  Moreover, it would be delusion

and irrational to believe that these experienced attorneys would violate their professional responsibilities and sacrifice their good standing and reputation in the states they are licensed.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE 5TH AMENDMENT
## EQUAL PROTECTION CLAUSE

*58.* The preceding allegations and the allegations in the subsequent causes of action are incorporated in this cause of action.

59. DC LCvR 83.8 (a)(2) is s unlawful because it is based on the location of a lawyer's office. It is unlawful because it contradicts the norm of comity.

60. It would be anomalous to hold Supreme Court precedent on bar admission on motion is not equally relevant to federal bar admission that incorporates state law under the 5th Amendment Equal Protection Clause.

61. *In re Lockwood,* 154 US 116 (1894), Belva A. Lockwood was admitted to practise (sic) law in the Supreme Court of the District of Columbia, and the bars of several States of the Union. The Virginia Supreme Court rejected her application for admission because she was a woman, citing *In Bradwell v. The State*, 16 Wall. 130 (1873), where the Supreme Court "held that the right to practise (sic) law in the state courts was not a privilege or immunity of a citizen of the United States."

62. In 1873, in *Bradwell*, a woman was denied the right to practice law by the State of Illinois. A concurring opinion emphasized,

"The paramount destiny and mission of woman are to fulfil (sic) the noble and benign offices of wife and mother. This is the law of the Creator. And the rules of civil society must be adapted to the general constitution of things, and cannot be based upon exceptional cases." *Id*. 141-42

63. *Lockwood* and *Bradwell* are obviously antiquated, but they show the history of our law.

64. In the seminal case *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985), the Supreme Court held,

The lawyer's role in the national economy is not the only reason that the opportunity to practice law should be considered a "fundamental right." We believe that the legal profession has a noncommercial role and duty that reinforce the view that the practice of law falls within the ambit of the Privileges and Immunities Clause.[fn11] Out-of-state lawyers may — and often do — represent persons who raise unpopular federal claims. In some cases, representation by nonresident counsel may be the only means available for the vindication of federal rights. *Id*. at 281-82.

65. *Piper* recognizes there is no First Amendment difference between the constitutional duty of a lawyer to petition and a newspaper to publish.

66. More particularly, *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988) squarely holds that bar admission on motion for sister-state attorneys is a constitutionally protected Privilege and Immunity. Virginia argued Ms. Friedman could take the bar examination, and thus the Clause was not offended. The Court rejected this contention stating, "The issue instead is whether the State has

burdened the right to practice law, a privilege protected by the Privileges and Immunities Clause, by discriminating among otherwise equally qualified applicants solely on the basis of citizenship or residency.  We conclude it has." *Id*. at 67.  The norm under the Privileges and Immunities Clause is comity, i.e. equal treatment.   The Supreme Court stated, "we see no reason to assume that nonresident attorneys who, like Friedman, seek admission to the Virginia bar on motion will lack adequate incentives to remain abreast of changes in the law or to fulfill their civic duties." *Id*. at 69.

67.  As in *Friedman*, LCvR 83.8 (a)(2) discriminates among otherwise equally qualified sister-state attorneys in bar admission on motion, and it is thus unconstitutional. LCvR 83.8 (a)(2) further offends the constitution because it provides the Plaintiffs in this 21st Century the same archaic privileges provided to blacks and women in the 19th Century.

### A.   RATIONAL BASIS REVIEW

68.  Plaintiffs aver LCvR 83.8 (a)(2) violates the Fifth Amendment Equal Protection Clause even under a rational basis standard of review.

69.  LCvR 83.8 (a)(2) on its face is retaliation. Retaliation in the opportunity to exercise constitutional rights is per se unlawful.

70.  Targeting an unpopular class is not rational. It is beyond cavil that it is constitutionally prohibited to single out and disadvantage an unpopular group.

*United States v. Windsor*, __ U.S. __, 133 S.Ct. 2675 (2013).  In *Romer v. Evans*,
517 U.S. 620 (1996), the Court held that an amendment to a state constitution,
ostensibly just prohibiting any special protections for gay people, in truth violated
the Equal Protection Clause, under even a rational basis analysis. In *Romer*, the
Supreme Court struck down Colorado's Constitutional Amendment 2 because, the
Court held, "[w]e cannot say that Amendment 2 is directed to any identifiable
legitimate purpose or discrete objective. It is a status-based enactment divorced
from any factual context from which we could discern a relationship to legitimate
state interests; it is a classification of persons undertaken for its own sake,
something the Equal Protection Clause does not permit." *Id*. at 635. The Supreme
Court deemed this "class legislation ... obnoxious to the prohibitions of the
Fourteenth Amendment." *Ibid*.

71. LCvR 83.8 (a)(2), similar to the laws targeting gays and lesbians, is
obnoxious status-based rule making enacted to target an unpopular group; not even
based on the qualifications of that group, but on the geographical location of the
group's bar admission and principal office location.  This is discrimination for the
sake of discrimination, and not a legitimate governmental interest.

72.  If by law, a layman is presumed to know the law, or can presumptively
find it, and is presumptively capable of representing herself — *a fortiori* an
experienced licensed attorney can do the same.  The hypothesis that a layman is

presumptively competent, while on the other hand, an experienced lawyer is presumptively incompetent is implausible and irrational.

73. Plaintiffs assert their right to injunctive and declaratory relief under 28 U.S.C. §2201.   There is an actual controversy of sufficient immediacy and concreteness relating to the legal rights of the Plaintiffs and their injury, and their relation to and the duties of the Defendants, to warrant relief under 28 U.S.C. § 2201.

73. Plaintiffs therefore request the following relief:

- An Order declaring LCvR 83.8 (a)(2) unconstitutional and enjoining its enforcement.

- An Order declaring that District Court Local Rules shall provide the opportunity for general bar admission privileges to all sister-state attorneys admitted to the highest court of any state.

- Costs.

- Attorney fees.

- Grant such other relief as may be just and proper.


Dated:  December 3, 2013          /s/ *Raymond Carignan*

By: Raymond Carignan, Esq.
Raymond Carigan, Esq., LLC

DC Bar ID: 388591
Attorney for Plaintiffs NAAMJP et. al.
10176 Baltimore National Pike, Suite 202
Ellicott City,  MD 21042
Phone: 410-703-2703
Email: ray.carignan@raycarignan.com


*/s/ Joseph Robert Giannini*

Joseph Robert Giannini, Esq.
PA State Bar 38814
Attorney for Plaintiffs NAAMJP et. al.
12016 Wilshire Blvd. Suite 5
Los Angeles, CA 90025
Phone 310 207 1776
Email j.r.giannini@verizon.net